KECK, J.
The return shows that, upon the trial of this action in the justice’s court, the following proceedings were had, viz.: The defendants admitted each and every allegation in the complaint contained, and also admitted that the bond, a copy of which is made a part of the said complaint, was prepared by Mr. Nellis, the attorney for the defendants. The plaintiffs then rested. The plaintiff admitted, on behalf of the defendants, the facts, set forth hereinabove, constituting the answer of said defendants and each of them. The testimony then closed. By this admission of the plaintiff, he admitted the answer interposed by the defendants, which is as follows, viz.:
“That the next court of sessions after the order of filiation, set "forth in the complaint, was made, was held on the 4th day of December, 1893; that the magistrates making the said order and receiving the said undertaking transmitted it to the said court of sessions at its opening on the 4th day of December, 1893, with a certified copy of the said order; and that the said Charles Moore [meaning the putative father in the bastardy proceedings and principal in the undertaking] appeared at the said court of sessions to answer the charges and obey its ¿rders thereon, but the case was not called, and no record was made; that, when said order of filiation was made, Charles Moore, the putative father, paid the costs therein certified.”
After the testimony was closed, the defendants moved to dismiss the complaint upon the merits, upon the ground that, upon the proofs, no cause of action existed in favor of the plaintiff and against the defendants, or either of them, which motion was denied, and judgment rendered against the defendants for sixty dollars damages, and four dollar’s and eighty-eight cents costs, and from which this appeal is taken.
It is urged by the appellants that this judgment was erroneous for two reasons, mainly: (1) That the undertaking containing several alternatives rendered it void; and (2) that the appeal *493 was to the next court of sessions under subdivision 2 of section 850 of the Code'of Criminal’Procedure, and the appearance of the principal at said court relieved the sureties from liability upon the undertaking. The respondent claims, however, that the undertaking operated as an appeal to obey the order of filiation.
The material part of the undertaking in question, on which the action is founded is as follows, viz.:
“Mow, the consideration of this obligation is such that, if said Charles Moore shall pay such sums for the support of the said bastard child and the sustenance of its mother as are ordered by the said justices as aforesaid, or as shall at any time hereafter be ordered by the court of sessions of said county, and shall fully and amply indemnify the said town, and every other county, town, or city, which may have or may be put to expense for the support of the bastard or of its mother, * * * or that the said Charles Moore will appear at the next court of sessions to be held in and for the county of Fulton to answer the charges and obey its orders thereon, or that the said John Moore and Philip Frederick will pay a sum equal to the full indemnity for supporting the bastard and its mother, as provided in the first subdivision of section 844 of the Code of Criminal Procedure, then this obligation to be void; otherwise, to remain in full force and virtue.
“[Signed] John Moore. [Seal.]
“Philip Frederick. [Seal.]”
I
—And was approved by the magistrates receiving it.
Section 851 of the Code of Criminal Procedure provides for two distinct kinds of undertaking, and is in the alternative, either that the defendant will pay the sum directed for the support of the child, or will appear at the next court of sessions of the county to answer the charges, and obey its orders thereon. People ex rel. Comrs. v. Schildwachter, 87 Hun, 363; 68 St. Rep. 436. One of the alternatives only can properly be inserted in an undertaking of this kind, as one only need be complied with by the putativo father. This undertaking, therefore, contains at least two distinct alternatives, when, to be correct, it should have contained but one.
The various sections of the Code of Criminal Procedure governing proceedings before magistrates respecting bastards arc almost precisely the same as those of the Revised Statutes which governed such proceedings for years immediately prior to the adoption of this Code,—the several sections of which applicable to and governing this case being re-enactments of such provisions, consequently decisions of the courts under those provisions are as useful as authorities as if made since, and may aid in determining the question here involved, and particularly as to the first point made by the appellants, that the undertaking is void because of these alternatives therein contained. In the ease of Hoogland v. Hudson, 8 How. Prac., at page 343, Strong, J., holds that a bond exe *494 cuted by a putative father of a bastard child, under section 14, tit. 6, c. 20, pt. 1, p. 645 I Rev. St., embracing, conjointly, the two conditions in that section, is a nullity, and that no action could be maintained upon such a bond, because the action upon one of the conditions (for payment under the order of filiation) is to be brought by the overseer of the poor, but upon the other condition (to appear at the next court of sessions) by the district attorney of the county in.the name of the people.
Row section 851, above referred to, is the same as section 14 of the Revised Statutes, under which this decision was made. By section 882 of this Code, it is provided that, when the undertaking to obey an order in relation to the support of the bastard is forfeited, it may be prosecuted in the name of the county superintendent or the overseer of the poor of the town liable for such support; but, if the appeal is one that requires the putative father to appear- at the next court of sessions, and not from the order of filiation, as provided for in this section, then an action cannot be maintained by such overseer, but must be prosecuted by the district attorney of the county in the name of the people, after forfeiture, and an order of the court made authorizing or directing the prosecution thereof, as provided by section 881 of such Code. If, therefore, the holding of the court in the case above referred to is correct, and I think it is, then the undertaking upon which this action is based is a nullity, by reason of its alternative provisions^ and the judgment ajipealed from should be reversed.
If, however, it be assumed that the undertaking with these distinct alternatives in it is valid, and that one or the other of them may be regarded and treated as surplusage, and ignored, then, who has the right to determine or elect which alternative shall be complied with, and which one rej ected ? Shall the people, or the putative father, the principal in the undertaking, have this right of election? The rule laid down by Coke, and almost universally recognized, is as follows:
‘That in case an election be given of two or more several things, always he which is the first agent, and which ought to do the first' act, shall have the election.” '
And in the case of Smith v. Sanborn, 11 Johns. 59, the rule is-laid d own as follows:
“The right of electing the alternative belonged to the defendant. * * * The right of election by the debtor in all alternative obligations was also a principle in the civil law.”
Therefore, if the right of election in contracts of a civil nature belong to a defendant, or to him who is the first agent, and who ought to do the first act, how much more fully and unquestionably should that right belong to and be accorded to a man who is being-prosecuted in a proceeding which is of a quasi criminal nature, as-bastardy proceedings are. The principal, Charles Moore, therefore, in whose behalf this undertaking was given, must be held to have had the right to make the election as to which one of these several alternatives or conditions he would comply with. And, it *495 being alleged in the answer of defendants, and admitted by plaintiff (and it cannot now be questioned), “that he did appear at the next court of sessions held after his arrest, to which the magistrates making the order and receiving the undertaking had transmitted the same, at its opening on ¡December 4, 1893, to answer the charges and obey its order, but that the case was not called and no record was made,”—can it properly be held that he did not comply with the terms of this undertaking? ¡Now the alternative in the undertaking which he' selected and undertook to obey required that he appear at the next court of sessions of said county to answer the charge and obey its orders thereon; and, if he did this, then the -sureties were exonerated from liability on the undertaking.
The learned counsel for the respondent contends, and cites several cases which he claims support such contention, that the answer, and the defense made under it, were insufficient, for the reason that such answer should have alleged that said Charles Moore did appear, and did answer, and that the defendants should have made their proof accordingly. But this was unnecessary because the undertaking only required “that the said Charles Moore will appear at the next court of sessions to obey its orders thereon,” in accordance with the provisions contained in subdivision 2 of section 851, cited-above; and by so doing he did all that the undertaking, or the law under and by virtue of which it was given, required of him. If the case had been called, and a record made thereof, and he had not appeared, then the position of the respondent might be correct; but it is of no force under the admitted facts of this case. A party bound to appear at a court of criminal jurisdiction, and answer what shall be objected against him, forfeits his recognizance if he departs without leave; and it is no answer, to a suit on the recognizance, that he appeared and was ready to answer, if, at a subsequent day of the court, he did not appear when demanded. People v. Stager, 10 Wend. 431. Here there was an appearance on the proper day and time, and there is no pretense that the people, or any one having the right to do so, appeared at the next court of sessions mentioned in this undertaking, or at any subsequent term thereof. Hence it would not have aided the respondent’s position in the least had it been alleged or shown that said Charles Moore remained in court during its entire session, and also attended each subsequent session thereof, as no action was ever taken therein in behalf of the people in the bastardy proceedings against him, and such failure operated to exonerate the sureties from liability on the undertaking.
Por these reasons alone, even assuming that-the undertaking was valid in all resnects, the sureties, who are the defendants herein, were relieved from liability, and the judgment recovered against them herein should be reversed, with costs, and an order is directed to be entered accordingly.